UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DIANE VANDER HEYDEN,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV-08-198-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on January 30, 2009. (Ct. Rec. 12, 14). Attorney Maureen J. Rosette represents Plaintiff; Special Assistant United States Attorney David M. Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 17.) On January 13, 2009, plaintiff filed a reply. (Ct. Rec. 16.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 14) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 12.)

**JURISDICTION**

Plaintiff protectively filed an application for disability insurance benefits (DIB) on June 10, 2005, alleging onset as of

ORDER GRANTING DEFENDANT'S
FOR SUMMARY JUDGMENT - 1 -

1  June 1, 2001; at hearing, the onset date was amended to August 1,
2  2003. (Tr. 52-56, 58, 274.)  The application was denied initially
3  and on reconsideration. (Tr. 37-38, 41-43.)  Administrative Law
4  Judge (ALJ) Richard A. Say held a hearing on September 13, 2007.
5  (Tr. 271-298.)  Plaintiff, represented by counsel, and vocational
6  expert Tom L. Moreland testified.  On September 27, 2007, the ALJ
7  issued a decision finding that plaintiff was not disabled.  (Tr.
8  28.)  The Appeals Council denied a request for review on May 14,
9  2008.  (Tr. 5-7.)  Therefore, the ALJ's decision became the final
10 decision of the Commissioner, which is appealable to the district
11 court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action
12 for judicial review pursuant to 42 U.S.C. § 405(g) on June 24,
13 2008. (Ct. Rec. 1, 4.)

**STATEMENT OF FACTS**

   The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner, and will only be summarized here.

   Plaintiff was 46 years old on the amended onset date and 51 at the time of the decision.  She has an associate's degree in accounting and certification as a nurse's aide.  (Tr. 64, 274, 286.)  Plaintiff has worked as a certified nurse attendant, cleaner/housekeeper, fast food worker, deli worker, and cashier. (Tr. 291-292.)  She alleges disability as of August 1, 2003, due to arthritis in her knee, hypertension and epilepsy. (Tr. 58.)

**SEQUENTIAL EVALUATION PROCESS**

   The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to

preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

    The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

1  Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to

resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At the outset the ALJ found plaintiff was last insured through December 31, 2007, for purposes of her DIB claim. (Tr. 18, 20.) The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since onset. (Tr. 20.) At steps two and three, the ALJ found that plaintiff suffers from degenerative joint disease of the right knee, seizures, and obesity, impairments that are severe but do not meet or medically equal the requirements of the Listings. (Tr. 20, 25.) After finding plaintiff not fully credible, the ALJ determined plaintiff has the RFC to perform a range of light work. (Tr. 25, 27.) At step four, the ALJ relied on the vocational expert's testimony and found a person with plaintiff's impairments and

background could perform her past relevant work as a cleaner/housekeeper, deli worker and cashier II. (Tr. 28.) Because the ALJ found plaintiff is able to perform past relevant work, he was not required to proceed to step five. The ALJ found plaintiff not disabled. (*Id.*)

**ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law when he weighed the medical evidence and assessed plaintiff's credibility. (Ct. Rec. 13 at 11-13 and 14-15, respectively.) The Commissioner responds that the ALJ's assessment of the medical evidence and plaintiff's credibility is without error, and asks that the decision be affirmed. (Ct. Rec. 15 at 6.)

**DISCUSSION**

**A. Weighing evidence of psychological impairment**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's

physical condition. *Fair v. Bowen*, 885 F. 2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1996). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F. 3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F. 3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F. 3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

An impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to

work." *Webb. Barnhart*, 433 F. 3d 683, 686-687 (9th Cir. 2005)(citing *Smolen v. Chater*, 80 F. 3d 1273, 1290 (9th Cir. 1996); *see Yuckert v. Bowen*, 841 F. 2d 303, 306 (9th Cir. 1988). If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step. S.S.R. No. 85-28 (1985). Step two, then, is "a de minimus screening device [used] to dispose of groundless claims," *Smolen*, 80 F. 3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is "clearly established by medical evidence." S.S.R. 85-28. The question on review is whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. *Webb*, 433 F. 3d at 687; *see also Yuckert*, 841 F. 2d at 306.

Plaintiff contends that the ALJ erred by rejecting the opinion of examining psychologist John Arnold, Ph.D., and by finding at step two she suffers from no severe mental impairment. (Ct. Rec. 13 at 11-14). The Commissioner responds that the ALJ properly weighed the medical evidence and his finding at step two should be affirmed. (Ct. Rec. 15 at 6).

When Dr. Arnold assessed plaintiff on August 30, 2007, she described experiencing seizures since age twelve and currently had petit mal seizures twice a month. They last several minutes and do not cause her to lose consciousness. She takes anticonvulsants

and has had memory problems for two years. (Tr. 254.) Dr. Arnold notes plaintiff reported being depressed and began treatment with celexa five months earlier. Dr. Arnold reviewed a December 1, 2004, report by John McRae, Ph.D., noting the only test Dr. McRae gave plaintiff was the Beck Depression Inventory. Plaintiff's results were subclinical for depression. (Tr. 255.) Dr. Arnold notes neurologist John Wurst, M.D., diagnosed juvenile myoclonic epilepsy on December 5, 2006. (Id., referring to Tr. 222.) Dr. Arnold notes plaintiff has a two year college degree and earned a 3.2 GPA. (Id.)

Dr. Arnold's testing revealed average memory and intellectual functioning. (Tr. 256.) He diagnosed dysthymic disorder, rule out major depression, schizoid personality disorder, and seizure disorder. He assessed a current GAF[1] of 62 with the past year's highest of 65. (Id.)

Dr. Arnold assessed plaintiff as moderately limited in the ability to: (1) maintain attention and concentration for extended periods; (2) work in coordination with or proximity to others without being distracted by them; (3) accept instructions from and respond appropriately to criticism from supervisors; and (4) travel to unfamiliar places or use public transport. (Tr. 263-264.) He also opined plaintiff was limited with respect to

---

[1] A GAF (Global Assessment of Functioning) of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION(DSM-IV), at p. 32.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 10 -

"adaptability to situations involving the interpretation of feelings, ideas or facts in terms of personal viewpoint"; "adaptability to influencing people in their opinions, attitudes, or judgments about ideas or things"; dealing with people beyond giving and receiving instructions; and performing under stress when confronted with emergency, critical, unusual, or dangerous situations. (Tr. 265.)

The ALJ found "recently diagnosed mental disorders [such as Dr. Arnold's 2007 assessment] are imposing no more than a minimal or *de minimus* limitation on her ability to do work-related activities, and therefore, are not a severe impairment." (Tr. 25.) In reaching this conclusion, the ALJ considered the opinions of Dr. Arnold, neurologist Dr. Wurst, and examining psychologist Dr. McRae. (Tr. 22-25.)

The ALJ notes Dr. McRae evaluated plaintiff in December of 2004 after she was referred by the Division of Vocational Rehabilitation. Dr. McRae states plaintiff cared for her husband who suffered from dementia. She sought in-home part-time work. (Tr. 22, referring to Exhibit 12F.) The ALJ considered Dr. McRae's report that plaintiff felt a little down, but not to the point of feeling depressed, and denied feeling any anxiety. ALJ Say notes that at Dr. McRae's exam:

> [plaintiff] reported psychiatric hospitalizations in 1977 due to an overdose related to discovery of abuse of her daughter, and again in 1981 after the birth of a child combined with being over medicated with anti-seizure medication. She reported a brief period, in the late 1980s, when she experienced obsessive-compulsive disorder symptoms. She tried Prozac in the 1990s, but stopped after a few months. She believed her symptoms of depression were related to being over medicated with anti-seizure medication as well.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 11 -

> . . . She complained of problems with her right knee and leg, and high blood pressure. She was on medication for seizures, and had been seizure free as long as ten years at a time. She reported she stayed home nearly all the time caring for her husband, who had been unable to work for three years. She enjoyed quilting and cards. She played some pool with her husband. She cleaned and did chores, and baked bread weekly.
>
> . . . On mental exam, she was alert and cooperative, logical and progressive in her thinking. On Beck Inventory III[2], she scored in the non-depressed range.
> On the Beck Anxiety Index, she scored in a non-anxious range. She specifically denied any current obsessive-compulsive ideas or behavior. Dr. McRae diagnosed history of depressive disorder, not otherwise specified in remission greater than 20 years, history of obsessive-compulsive complaints, in remission 17 years, and global assessment of functioning of 65. Dr. McRae reported she had no manifest symptoms of depression or anxiety and had no current need for treatment.

(Tr. 22, referring to Exhibit 12F.)

The ALJ notes both Dr. Arnold in 2007 and Dr. McRae in 2004 indicate a history of psychological hospitalizations many years ago, but no current cognitive or memory problems. (Tr. 25, comparing Exhibit 12F with Exhibit 13F.) The ALJ points out that Dr. Arnold's testing indicated average memory and adequate concentration skills. ALJ Say notes that in December of 2006, Dr. Wurst indicated plaintiff had some memory and other cognitive symptoms, which were thought to be related to menopause or possibly medication. (Tr. 25, referring to Exhibit 9F.)

The ALJ points out Dr. McRae assessed no depression at the time of his evaluation. The ALJ notes plaintiff told Dr. Arnold she was prescribed antidepressant medication only a few months earlier [than August 2007]. This is significant given that

---

[2]The record indicates Dr. McRae administered the Beck Depression Inventory II (see Tr. 252) but any resultant error appears harmless.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                          - 12 -

plaintiff's last insured date is December 31, 2007.  The ALJ observes there is no indication in the record of ongoing depression or other mental impairment between Dr. McRae's evaluation [in 2004] and Dr. Arnold's [in 2007].  The ALJ sees that while both Drs. McRae and Arnold assessed GAFs in the 60s, indicating mild symptoms, Dr. Arnold assigned several moderate limitations.  The ALJ gave little weight to Dr. Arnold's assessed limitations because they are inconsistent with his own report at 13F [including assessed GAFs of 62 and 65], with Dr. McRae's report [indicating no current need for treatment], and with the longitudinal record [indicating no ongoing mental health treatment or regularly prescribed psychotropic medication]. (Tr. 25.)

To aid in weighing the evidence, the ALJ evaluated plaintiff's credibility and found her less than fully credible. (Tr. 27.)  Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition.  See Webb v. Barnhart, 433 F. 3d 683, 688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations.  Andrews v. Shalala, 53 F. 3d 1035, 1039 (9th Cir. 1995).  However, the ALJ's findings must be supported by specific cogent reasons.  Rashad v. Sullivan, 903 F. 2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence.  Reddick v. Chater, 157 F. 3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 13 -

reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F. 3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).

The ALJ relied on several factors when he assessed credibility. Plaintiff inconsistently stated she stopped working due to disability, and stopped work to move to Washington to care for her ill husband. (Tr. 27.) Plaintiff engages in a wide range of daily activities, including caring for her husband, cleaning, laundry and cooking, which are not consistent with the degree of claimed impairment. (Tr. 27.) Complaints of problems with her knees and with memory are not supported by medical evidence. (Tr. 27.) The ALJ notes that no treating physician has opined plaintiff is unable to work. (Tr. 28.)

The record does not reveal evidence of severe mental impairment from the date of onset (August 1, 2003) until December 31, 2007, the date last insured, contrary to plaintiff's assertion. On December 4, 2003, Dr. McRae assessed a past year's highest GAF of 70, indicating only mild symptoms. (Tr. 253.) In July of 2005, plaintiff described her daily activities: caring for personal needs and for her husband who suffers from dementia, laundry, cooking, shopping and cleaning. She reported walking the dog, keeping a journal, watching movies and television, and visiting friends. (Tr. 88-92.)

Interestingly, plaintiff has indicated many anti-convulsants, including dilantin, left her "depressed and weepy." (Tr. 78.)

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                 - 14 -

1  Plaintiff indicated she took dilantin from 1968 until 1999.  (Tr.
2  208.)
3       The ALJ's reasons for finding plaintiff less than fully
4  credible are clear, convincing, and fully supported by the record.
5  *See Thomas v. Barnhart*, 278 F. 3d 947, 958-959 (9th Cir.
6  2002)(proper factors include inconsistencies in plaintiff's
7  statements, inconsistencies between statements and conduct, and
8  extent of daily activities).  Noncompliance with medical care or
9  unexplained or inadequately explained reasons for failing to seek
10 medical treatment also cast doubt on a claimant's subjective
11 complaints.  20 C.F.R. §§ 404.1530, 426.930; *Fair v. Bowen*, 885 F.
12 2d 597, 603 (9th Cir. 1989).  The ALJ gave clear and convincing
13 reasons for finding plaintiff less than fully credible.
14      The ALJ's reasons for rejecting Dr. Arnold's assessed
15 moderate limitations are specific, legitimate, and supported by
16 substantial evidence.  And, the ALJ's finding at step two that
17 plaintiff does not suffer from a severe mental impairment (one
18 causing more than a minimal effect on her ability to work) is
19 supported by the record, especially given the lack of regularly
20 prescribed psychotropic medication or therapy.
21 **B. Weighing evidence of physical impairment**
22      Plaintiff argues that the ALJ erred in determining her RFC by
23 failing to properly reject her testimony that she is physically
24 limited, in part because she experiences petit seizures.  (Ct.
25 Rec. 13 at 15.)  As indicated, the ALJ's credibility determination
26 is supported by clear and convincing evidence.
27      The ALJ observes that no treating physician has opined
28 plaintiff in unable to work.  (Tr. 28.)  He notes that plaintiff

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 15 -

told Dr. Wurth in January of 2006 that she felt she had minor seizures or pre-seizure feelings (breakthrough seizure symptoms) which seemed to be associated with fragmented sleep the night before relative to her husband's illness. (Tr. 27, referring to Tr. 210.) Plaintiff's daily activities, including caring for another person, significantly undercut the claimed degree of impairment and limitation. ALJ Say notes that in November of 2006, Dr. Wurst reported a ten month gap in plaintiff's treatment for seizure disorder. (Tr. 23.)

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F. 2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The ALJ provided clear and convincing reasons for finding plaintiff's allegations not fully credible. The ALJ's assessment of the medical and other evidence is supported by the record and free of legal error.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this court finds that the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 14)** is

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT - 16 -

1 **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 12)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 30th day of January, 2009.

                              s/ James P. Hutton

                              JAMES P. HUTTON
                        UNITED STATES MAGISTRATE JUDGE